UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ERIC SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:12-CV-442 JD |
| v. | ) | |
| | ) | |
| MICHAEL OSBURN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>OPINION AND ORDER</u>

Eric Sanders, a *pro se* prisoner, filed a complaint pursuant to 42 U.S.C. § 1983

challenging his assignment to long-term administrative segregation at Westville Correctional

Facility ("Westville"). [ECF No. 1.] Sanders has not yet paid an initial partial filing fee despite

having the financial means to do so [*see* ECF No. 4], and so the Court has not issued a screening

order pursuant to 28 U.S.C. § 1915A. *See Newlin v. Helman*, 123 F.3d 429, 432 (7th Cir. 1997),

*overruled on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000); *Martin v. United*

*States*, 96 F.3d 853, 856 (7th Cir. 1996). Before the court is Sanders's motion for a preliminary

injunction requiring his immediate transfer out of Westville while this case is pending. [ECF No.

2.]

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not

be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v.*

*Armstrong*, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, the moving party

must demonstrate that he or she has a reasonable likelihood of success on the merits, lacks an

adequate remedy at law, and will suffer irreparable harm if immediate relief is not granted. *Girl*

*Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc*., 549 F.3d 1079, 1086 (7th Cir. 2008).

The court employs a "sliding scale" approach, balancing the degree of likelihood of success on the merits against the irreparable harm that will occur if immediate relief is not granted. *Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir. 1994). Thus, "the more likely the moving party will succeed on the merits, the less element of irreparable harm must weigh in its favor. Similarly, the less likely that the party seeking the preliminary relief will have success on the merits, the greater the element of irreparable harm required to weigh the balance in its favor." *Id.*

Sanders first claims that he was transferred to the segregation unit at Westville without adequate due process protections, and that the process by which his assignment is reviewed each month has been "perfunctory" and "unmeaningful." [ECF No. 2-2 at 6.] Sanders relies extensively on alleged violations of Indiana Department of Correction ("IDOC") policies and procedures, but violations of internal prison policy do not give rise to a claim under 42 U.S.C. § 1983. *See Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.") (internal citation omitted); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws" or administrative regulations).

To the extent Sanders is alleging a claim based on violation of federal law, the Constitution itself does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*,

515 U.S. at 484. After *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). The Seventh Circuit has repeatedly held that inmates have no liberty interest in avoiding temporary transfer to segregation imposed for administrative, protective, or investigative purposes, even where they are subject to harsher conditions. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005); *Wagner*, 128 F.3d at 1176. Under certain circumstances, long-term segregation approaching a year or more can implicate a liberty interest, requiring further inquiry into the conditions of confinement.[1] *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009)(determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage).

Here, Sanders alleges that he has been in administrative segregation for approximately eight months, and that he has been subjected to far harsher conditions than those imposed on prisoners in the general population, including a lack of contact visits or other human contact and limited opportunities for exercise. [ECF No. 1 at 14-15; ECF No. 2-2 at 4.] Sanders may be able to proceed past the pleading stage with these allegations; however, ultimate success will prove difficult given the high standard needed for a deprivation to be considered atypical and significant. As the Seventh Circuit has recognized, routine discomfort is part of the penalty prisoners pay for their offenses, and prisoners cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). The Circuit

---

[1] If a liberty interest is at stake, the inmate is entitled to some type of informal, nonadversarial due process protections, including notice of the reason for the transfer and an opportunity for periodic review of his placement. *See Westefer v. Neal*, 682 F.3d 679, 682-83 (7th Cir. 2012.)

has rejected claims of hardships posed to inmates in long-term segregation, even where the challenged conditions were harsh and restrictive. *See Lekas*, 405 F.3d at 612 ("The detailed hardships of which Lekas complains [in segregation]. . . are not so atypical and significant as to constitute a deprivation of a liberty interest . . . ."); *Thomas v. Ramos*, 130 F.3d 754, 762 (7th Cir. 1997) ("In spite of [plaintiff's] extended period in disciplinary segregation, we are convinced that it did not result in an atypical and significant deprivation because the conditions he experienced did not greatly exceed what one could expect from prison life generally."). For these reasons, Sanders has a limited chance of success on the merits of his due process claim.

Sanders also claims that prison staff violated his equal protection rights by treating him more harshly than other inmates with maximum-security classifications who are not housed in segregation. [ECF No. 1 at 19-23.] To establish a *prima facie* case of discrimination under the Equal Protection Clause, the plaintiff must prove that he is a member of a protected class, that he was otherwise similarly situated to persons outside the protected class, and that he was treated differently from persons outside the protected class. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Such claims also require proof of discriminatory motive. *See Washington v. Davis*, 426 U.S. 229, 239-41 (1976); *see also David K. v. Lane*, 839 F.2d 1265, 1272 (7th Cir. 1988 ) (equal protection claim by white prisoners failed because they presented no evidence that officials had a discriminatory motive in implementing challenged policies). When an equal protection claim is not based on a suspect class, such as race, a prison may treat inmates differently if the unequal treatment is rationally related to some legitimate penological interest. *See May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). This is not a difficult standard to meet, and the court cannot find a

challenged action irrational simply because it may be "unwise" or "improvident." *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 685 (7th Cir. 2005).

Here, Sanders does not allege any discriminatory motive on the part of prison officials, only that he believes it is unfair for him to be kept in long-term segregation while others are not. He also does not argue that he is being discriminated against on the basis of race or some other invidious reason; rather, his claim is that he is being subjected to harsher living conditions than other prisoners with maximum-security classifications. [ECF No. 1 at 19-25.] Documents he submits indicate that his assignment to segregation was based on safety concerns, namely, his extensive disciplinary record. [*See* ECF No. 1-1 at 1-2, 10-11.] Such concerns could provide a legitimate reason for treating Sanders differently than other maximum-security inmates. *See Whitley v. Albers*, 475 U.S. 312, 321–22 (1986) (court must afford prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). The prison's precise reasons are not outlined in the limited record before the Court, however, nor is Sanders's disciplinary record. Sanders's allegations may be enough to proceed past the pleading stage, but his overall likelihood of success on the merits is low.

Balanced against this, Sanders must make a significant showing of irreparable injury. *Vencor,* 33 F.3d at 845. As a general matter, where best to house Sanders is a decision firmly committed to the discretion of prison officials, and he does not have a right to be housed in any particular correctional facility or in the facility of his choice. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). Here, Sanders fails to establish that he will be irreparably injured during the pendency of this suit if the court does not

order his immediate transfer. Rather, it appears he would simply prefer not to be housed in segregation while this case is pending. He argues in general terms that he has depression and that the conditions in the segregation unit "can worsen my mental state in the near future . . . ." [ECF No. 2-2 at 7-8.] While the court is not unsympathetic to Sanders's mental illness, he fails to detail his symptoms or articulate any specific risk of harm.[2] Nor is it clear that any injury he might suffer could not be compensated with money damages if he ultimately prevails in this lawsuit. *See Girl Scouts*, 549 F.3d at 1089 (injury is "irreparable" only if it "cannot be prevented or fully rectified by the final judgment after trial."). Sanders also appears to argue that irreparable injury must be presumed because his constitutional rights are being violated. [ECF No. 2-2 at 7-8.] However, the Seventh Circuit recently reaffirmed that the propriety of injunctive relief "depends on irreparable harm, even when constitutional rights are at stake." *Wheeler v. Wexford Health Sources, Inc.*, —F.3d—, 2012 WL 2999967, at *1 (7th Cir. July 23, 2012) (citation omitted). Because Sanders has not satisfied the criteria for obtaining preliminary injunctive relief, his motion will be denied.

For these reasons, the plaintiff's motion for a preliminary injunction [ECF No. 2] is DENIED.

SO ORDERED.

ENTERED:   _ August 27, 2012 _

_____ /s/ JON E. DEGUILIO _____
Judge
United States District Court

---

[2] The court notes that all of Sanders's filings are fully lucid, and in fact are cogently written and contain extensive citation to applicable case law.

6