UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ERIC SANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:12-CV-442 JD |
| | ) |
| MICHAEL OSBURN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Eric Sanders, a *pro se* prisoner, is proceeding on a claim that he was transferred to long-term segregation at the Westville Control Unit ("WCU") in violation of his federal due process and equal protection rights. (DE 10.) He sues Michael Osburn, Indiana Department of Correction ("IDOC") deputy commissioner; Richard D. Brown, the superintendent of Wabash Valley Correction Facility ("WVCF"), where he was previously housed; M. Loehr, IDOC classification supervisor; James Basinger, IDOC central office executive director; Jayne Grimes, IDOC classifications director; Evan Lowry, complex director at WCU; and Douglas Barnes, a caseworker at WCU. Before the court is the plaintiff's motion for partial summary judgment on the issue of liability of Osburn and Basinger for due process violations.[1] (DE 37.)

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes

---

[1] The plaintiff has not moved for summary judgment against the remaining defendants (DE 37 at 4), nor does he seek a determination of damages at this time. (*See* DE 40 at 2.) He also does not address his equal protection claim, and instead limits his arguments to the due process claim. (*See* DE 38.)

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

As an initial matter, more than 28 days have passed since the plaintiff's motion was filed, and the defendants have not filed any response, despite being given notice of the motion electronically and directly by plaintiff through the mail. (*See* DE 37 at 15.) Pursuant to N.D. IND. LOCAL RULE 7-1(d)(4), a party's failure to file a response within the time prescribed may subject the motion to summary ruling. Nevertheless, "[s]trict enforcement of [local rules] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted." *Id.* The court still must "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.*

According to the documents before the court,[2] on June 10, 2011, a classification hearing was held at which Sanders was notified that he was being recommended for transfer to long-term segregation, or Department-Wide Administrative Segregation ("DWAS"), for safety and security reasons. (DE 1-1 at 1.) Sanders signed the form on that same date. (*Id.*) A "report of inter-institutional transfer" was also issued, indicating that the recommendation was based on Sanders' "poor adjustment" at his current facility. (*Id.* at 2.) According to IDOC policy, inmates may be referred to DWAS when they pose significant safety or security concerns, have behavior problems, or have a history of serious conduct violations. (DE 1-1 at 5.) On July 1, 2011, Sanders was notified that the transfer recommendation had been approved by the IDOC central office. (DE 1-1 at 3.) This notice advised Sanders that he had a right to appeal the decision, and provided the address where an appeal should be sent. (*Id.*)

On January 19, 2012, Sanders was transferred to WCU. (DE 38, Pl.'s Facts ¶ 2.) On February 16, 2012, he filed a classification appeal outlining the reasons why he felt the transfer was unwarranted. (DE 1-1 at 10.) His appeal was denied, and he was given a written explanation by Osburn. (*Id.* at 11.) Specifically, he was told that the assignment was appropriate and necessary in light of his "extensive conduct history." (*Id.*) Osburn encouraged Sanders to "improve your conduct history and work closely with Unit Staff in an effort to address your concerns in a constructive manner to better prepare you for return to a general population setting." (*Id.*) His assignment was reviewed by Barnes in May 2012 and July 2012, and it was determined that the assignment remained appropriate. (DE 1-1 at 12-13.) Sanders filed a second

---

[2] The evidence presented by the plaintiff consists of is his own declaration and (by reference) the attachments to his complaint. (DE 37.) However, much of his declaration is not based on personal knowledge and instead consists of legal conclusions, such as that he was "unconstitutionally transferred" to WCU. (DE 37, Sanders Decl. ¶¶ 2-3.) This is improper under the federal rules, and these legal conclusions will not be given any weight. *See* FED. R. CIV. P. 56(c)(4). Instead, it is for the court to determine whether Sanders' constitutional rights were violated.

classification appeal in May 2012. (*Id.* at 19.) The appeal was denied by Osburn, who responded that "[g]iven the contents of your extensive conduct history," the assignment remained appropriate. (*Id.*) Osburn noted that Sanders had "shown improvement" in his behavior in recent months, but advised him that officials "expect a positive pattern of appropriate behavior from you before recommending you for release from segregation." (*Id.*)

The Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate is entitled to due process protections only when more restrictive conditions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In light of *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005).

However, placement in long-term segregation of a year or more can implicate a liberty interest, requiring a determination of whether the conditions of confinement imposed an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009). If an inmate demonstrates that the conditions imposed at the new facility were atypical and significantly harsher than those experienced at the prior facility, he is entitled to certain due process protections in connection with the transfer. *Wilkinson*, 545 U.S. at 222. This is a high standard, and a liberty interest will not be triggered simply because conditions at the new facility are "more disagreeable" than those at the prior facility. *Lekas*, 405 F.3d at 609.

If a due process liberty interest is at stake, the inmate is entitled to "some informal, nonadverserial" procedures in connection with the transfer. *See Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012.) Informal due process requires "some notice" of the reason for the inmate's placement and an opportunity to present his views. *Id.* The initial placement review need only take place "within a reasonable time" of the inmate's transfer, and the inmate is not entitled to a hearing, to call witnesses, or to require prison officials to interview witnesses. *Id.* He is also not entitled to a written decision describing the reasons for his placement or to a formal appeal procedure. *Id.* at 686. He is entitled to periodic review of his placement by a neutral reviewer, but this process may also be informal and non-adversarial. *Id.* The frequency of such review is "committed to the administrative discretion of prison officials." *Id.* at 685. Review "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id.* at 686. In short, "the requirements of informal due process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

As a preliminary matter, the record reflects that Sanders is no longer housed at WCU, and he has not argued that he is likely to be transferred back there any time in the immediate future. (*See* DE 39.) Therefore, his claim for injunctive relief pertaining to his assignment at WCU has become moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Regarding his claim for damages, he has failed to carry his burden of demonstrating an entitlement to relief. First, he has introduced no evidence regarding the conditions at WCU, so as a threshold matter he has not demonstrated that he experienced an atypical and significant hardship, such that he was entitled to due process protections in connection with the transfer. *Wilkinson*, 545 U.S. at 222; *Sandin*, 515 U.S. at 484. This alone is fatal to his claim. *See Wilkinson*, 545 U.S. at 222; *see also Lekas*,

405 F.3d at 612 ("In the absence of such 'atypical and significant' deprivations, the procedural protections of the Due Process Clause will not be triggered.").

Assuming Sanders could establish that he had a liberty interest at stake, he has failed to establish that his due process rights were violated. The documents Sanders submits show that he received notice that he had been recommended for a transfer to long-term segregation, and another notice after the transfer recommendation was approved by IDOC. (DE 1-1 at 1-3.) These notices reflect that the reasons given were safety and security concerns, and his poor adjustment at his prior facility. (*Id.*) He was able to present his views regarding the assignment in two classification appeals, which were considered and addressed by Osburn. (*Id.* at 10-11, 19-20.) His placement was reviewed by another IDOC staff member three months after his transfer and again after six months, and both times it was determined that the placement remained appropriate. (*Id.* at 12-13.)

Sanders appears to complain that he was not given an opportunity to present his views *prior* to the transfer. (DE 37 at 5, 8.) However, the record belies this argument. He was notified in June 2011 that he had been recommended for a transfer, and in July 2011 that the recommendation had been approved. The July 2011 notice specifically advised him of his right to appeal, and provided him with the address where an appeal should be sent. Although he chose to wait until after the transfer to file an appeal, he has not offered any reason—let alone one attributable to the defendants—that he could not have pursued a classification appeal in the six months leading up to his transfer.

Moreover, even if he could show that he was unable to file a classification appeal until after the transfer, this would not establish a due process violation. *See Westefer,* 682 F.3d at 685. Informal due process requires only that the initial placement review occur within some

reasonable period, and even a month or more after the transfer is not considered unreasonable. *Id.* (collecting cases). Sanders appears to believe he was entitled to a full-blown hearing prior to his transfer, but this is not the case. The procedures that are required in this context are not demanding, and are even less demanding than in the prison disciplinary context. *Id.* at 684 (observing that the loss of earned-time credits implicates a "more significant liberty interest than a placement determination and requir[es] a greater measure of procedural protection"). Sanders only needed to be given notice of the transfer, some opportunity to present his views, and periodic review of his placement. As outlined above, those protections were observed here.

It is apparent that Sanders disagrees with prison officials' decision to transfer him to WCU, but his disagreement does not give rise to a due process claim. His federal due process right, to the extent he had one, was to procedural protections; he possesses no constitutional right to be assigned to any particular correctional facility within the IDOC or to the facility of his choosing. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). Sanders' argument that prison officials failed to comply with IDOC criteria when assigning him to WCU is similarly unavailing, since a violation of IDOC policy or other state law does not provide a basis for liability under 42 U.S.C. § 1983. *See Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.") (internal citation omitted); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws" or administrative regulations). In summary, Sanders has failed to establish an entitlement to summary judgment on his due process claim.

There are two other matters to be addressed. Sanders filed a "motion *in limine*" requesting that the court exclude evidence of his criminal convictions "that fall outside the scope of Fed. R. Evid. 609." (DE 41.) Although unclear, he appears to be trying to preclude the defendants from impeaching his credibility as a witness based on his criminal history. This case has not been set for trial, nor is Sanders testifying as a witness in this matter at present, and so the motion is premature. The court did not—and indeed could not—make a credibility determination in connection with the summary judgment motion. *See Stokes v. Bd. of Educ. of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010). If and when the case is set for trial or hearing, Sanders may renew his motion. Sanders also filed a second motion asking that the court grant summary judgment in his favor for the same reasons articulated in his original motion. (DE 40.) This motion will be denied for the reasons already stated.

For these reasons, the plaintiff's motions for partial summary judgment (DE 37, 40) are DENIED. The plaintiff's motion *in limine* (DE 41) is DENIED as premature. The parties are ORDERED to file brief status reports, not in excess of three pages, on or before **November 8, 2013**, addressing what additional motions or proceedings are anticipated in this case, and how the remainder of this case shall be resolved.

SO ORDERED.

ENTERED:   October 7, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court